Max Buchman v. Commissioner. Max Buchman and Freida Buchman v. Commissioner.
Buchman v. Commissioner
Docket Nos. 36849, 36851.
United States Tax Court
1954 Tax Ct. Memo LEXIS 327; 13 T.C.M. (CCH) 29; T.C.M. (RIA) 54025; January 18, 1954
*327 Vincent F. Kilborn, Esq., Room 307, 1st National Bank Building, Mobile, Ala., for the petitioners. Jackson L. Bailey, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined that there was a deficiency of $289.76 in the income tax of petitioner Max Buchman for the calendar year 1940 and that there were deficiencies of $3,206.45 and $14,194.90 in income tax of petitioners Max and Freida Buchman for the calendar years 1941 and 1942, respectively. He further determined that the deficiencies were due to fraud with intent to evade tax and that petitioners weer liable for 50 per cent additions to tax by reason of the provisions of Section 293 (b) of the Internal Revenue Code. Max and Freida Buchman are husband and wife. During the years here involved, they resided in Mobile, Alabama. Max Buchman was the owner of a small retail store known as the Hub Clothing Company which was engaged in selling low-priced clothing and merchandise. An individual income tax return for Max Buchman for the year 1940 and joint income tax returns for Max and Freida Buchman for the years 1941 and 1942 were filed *328 with the collector of internal revenue for the district of Alabama, at Birmingham, Alabama. Notices of deficiency for 1940, 1941 and 1942 were mailed to petitioners on June 25, 1951, more than three years after the filing of the returns for those years. The Commissioner used the net worth method of computing net income in determining the deficiencies. After making some adjustments in the statements of net worth which were attached to the notices of deficiencies, the Commissioner's final position as to the net worth for Max and Freida Buchman as of December 31 for the years 1939 through 1942, inclusive, is reflected in the following table: Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
1939
1940
1941
1942
Cash in banks
$ 2,267.68
$ 4,289.33
$ 4,540.17
$17,971.23
Merchandise inventory
10,430.49
9,922.25
26,281.31
32,690.51
U.S. Savings Bonds
8,817.50
Real estate
4,000.00
7,000.00
13,975.00
13,975.00
Mortgages receivable
4,286.48
3,049.04
1,811.60
Total assets
$16,698.17
$25,498.06
$47,845.52
$75,265.84
Liabilities and Reserve for
Outstanding checks
$ 1,856.06
$ 1,177.20
$ 4,592.73
$ 5,914.25
Accounts payable
1,282.19
2,192.85
4,654.34
4,815.68
Accounts payable, consignment merchandise in-
cluded in inventory
4,663.04
Notes payable to Merchants National Bank
350.00
2,500.00
4,200.00
250.00
Reserve for depreciation of rental property
41.66
299.58
714.58
Total liabilities and reserve for depreciation
$ 3,488.25
$ 5,911.71
$18,409.69
$11,694.51
Net worth
$13,209.92
$19,586.35
$29,435.83
$63,571.33
Less net worth of prior year
13,209.92
19,586.35
29,435.83
Increase in net worth
$ 6,376.43
$ 9,849.48
$34,135.50
Non-Deductible Personal Expenditures
Personal living expenses
$ 2,000.00
$ 2,000.00
$ 2,000.00
Life insurance premiums
581.10
694.50
882.90
Federal income taxes
61.88
Total personal expenditures
$ 2,581.10
$ 2,694.50
$ 2,944.78
Increase in net worth plus non-deductible personal expendi-
tures, or corrected net income
$ 8,957.53
$12,543.98
$37,080.28
Less net income reported
2,790.42
3,038.78
9,160.60
Unreported net income
$ 6,167.11
$ 9,505.20
$27,919.68
*329 The petitioners agree that for the purposes of this proceeding, such net worth statements shall be considered correct, except for two items, "Accounts payable" and "Accounts payable, consignment merchandise included in inventory." Those items arose from the business known as Hub Clothing Company which was owned by Max Buchman. Petitioners contend that the proper amounts to be allotted to the disputed items are as follows: Dec. 31,
Dec. 31,
Dec. 31,
Dec. 31,
1939
1940
1941
1942
Accounts payable
$3,235.38
$3,045.08
$6,940.16
$ 8,863.71
Accounts payable, consignment merchandise in-
cluded in inventory
0
0
4,663.04
14,950.00 The differing amounts of "accounts payable" which are contended for by the parties arise because of a dispute over the method to be used in determining such amounts in the absence of records. The Commissioner's contention is based upon accounts payable which are definitely known to have existed plus the amount of unexplained checks to suppliers issued in the month of January following the various years. The petitioners argue that checks issued in the month of February should similarly be taken into account since Mr. *330 Buchman was shown to have been very slow in paying his bills, thus raising the inference that checks given to creditors in January or February represented accounts that were outstanding as of the end of the preceding December. The amounts of "accounts payable, consignment merchandise included in inventory" represent, according to the petitioners, amounts due the Gulf Coast Tobacco Company for merchandise which it delivered to the Hub Clothing Company "on consignment," to be paid for when sold. The Gulf Coast Tobacco Company was a company owned in part by a brother-in-law of Max Buchman. Even assuming that petitioners' contentions as to those items are correct, the net worth statements demonstrate that there were some increases in net worth for all of the years in issue, in excess of the amounts reported as income for those years. However, the statute of limitations has run upon assessment of deficiencies for the years under review unless it can be shown that they are due to fraud. Accordingly, this is primarily a fraud case, and the burden of proof is upon the Commissioner to establish his position by clear and convincing evidence. We think that he has failed to sustain that burden. *331 Buchman was convincing in his testimony that he had a substantial amount of "consigned merchandise" on hand as of the close of 1942 which had been erroneously included in his inventory as of that time without any corresponding increase in his liabilities running in favor of the consignor. Moreover, we are satisfied that the net worth statement relied upon by the Government did not adequately reflect the "accounts payable" item for the periods in question. Finally, there was testimony, which we find credible, that if the net worth method employed for the years under review were projected into the following year, 1943, there would be a net loss for 1943 instead of net income in the amount of some $11,200 which petitioners reported for that year. This was in substance conceded by the internal revenue agent who made the net worth determination, upon the assumption that all of the petitioners' assets had been located as of the end of 1943. However, there is no reason to believe, on this record, that all such assets had not been located, and there is no suggestion that the income reported by petitioners for 1943 should have been reported for some other year. It is quite possible that *332 petitioners may have received unreported income during the years before us. But we are satisfied from the record as a whole, particularly from the apparently unreliable operation of the net worth method as employed here, that the Commissioner has not carried the burden called for in fraud cases. Decisions will be entered for the petitioners.